******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EARL SIMPSON
(AC 38643)

Beach, Keller and Bear, Js.

*Argued September 9—officially released November 1, 2016*

(Appeal from Superior Court, judicial district of New Haven, Clifford, J.)

*Deren Manasevit*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, former state's attorney, and *Brett R. Aiello*, special deputy assistant state's attorney, for the appellee (state).

*Opinion*

KELLER, J. Following the trial court's acceptance of his guilty plea under the *Alford* doctrine,[1] the defendant, Earl Simpson, was convicted of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8.[2] The defendant now appeals from the judgment, claiming that: (1) on the basis of facts and circumstances that were apparent to the court at the time of the plea and which undermined a finding that the defendant understood the nature of the charge at issue, the court abused its discretion by denying the defendant's motion to withdraw his plea prior to sentencing and, in the alternative, abused its discretion by failing to conduct an evidentiary hearing on the motion; (2) the court violated the defendant's right to counsel by failing to address the grievances that the defendant raised to the court concerning his attorney and, in the alternative, abused its discretion by failing to inquire with respect to such complaints; and (3) the court abused its discretion by accepting the plea and that its acceptance of the plea violated the defendant's right to due process. We agree with the defendant that the court improperly failed to conduct an evidentiary hearing with respect to his motion to withdraw his plea and failed to undertake a necessary inquiry with respect to his complaints concerning his attorney. Accordingly, we reverse the judgment and remand the case to the trial court for further proceedings with respect to those issues.

The following undisputed facts, which may be gleaned from the record of the underlying proceedings, are relevant to the claims raised in the present appeal. The defendant, represented by counsel, entered an *Alford* plea in this case on September 19, 2014. The state, by way of a long form information, filed on June 29, 2012,[3] charged the defendant in count one with felony murder under General Statutes §§ 53a-54c and 53a-8, in count two with murder as an accessory under §§ 53a-54a (a) and 53a-8, and in count three with robbery or attempt to commit robbery in the first degree in violation of General Statutes § 53a-134 (a) (1). Count two stated: "And the [State's Attorney for the Judicial District of New Haven] further accuses [the defendant] of Murder and charges that at the City of New Haven, on or about the 9th day of July, 2011, at approximately 6:00 a.m., in the area of Howard and Putnam Streets, the said [defendant] did, with intent to cause the death of another person, to wit: John Claude James, did shoot such person and caused the death of such person, said conduct being in violation of [§] 53a-54a (a) and 53a-8 of the Connecticut General Statutes."

At the plea canvass, the prosecutor stated that it was his understanding that the defendant was prepared to enter an *Alford* plea "on the second count of the information charging murder." The court clerk,[4] addressing the defendant, stated in relevant part: "[Y]ou've been

charged in the second count with murder in violation of Section 53a-54a of the Connecticut General Statutes. How do you plead, guilty or not guilty?" The defendant replied, "Guilty." The court acknowledged that the plea was made under the *Alford* doctrine. Thereafter, the defendant admitted that he had violated his probation in violation of General Statutes § 53a-32.

The prosecutor addressed the court to set forth the factual basis underlying the plea with respect to the murder count, as follows: "[W]ith respect to the plea on the second count of murder, the state is prepared to prove the following facts: On July 9, 2011, at about 6 p.m., New Haven police officers responded to the area of Howard Avenue and Putnam Street based upon a report of shots fired. They located the body of John Claude James, age twenty-six. It was evident to them that he had been shot several times. A later autopsy determined that he had been shot five times in the back area. All but one bullet had exited the body. They were never located.

"During the investigation, a witness stated she was in her apartment nearby. Moments after hearing the shots, Cody Franklin and the defendant . . . ran into her apartment. Franklin said that he had just shot someone. The witness also said [the defendant] offered her weed to say that he and Franklin had not been in her apartment. [The defendant] then called his sister, Isis Hargrove, asking her to pick them up. Franklin and the defendant . . . were a short time later seen getting into Isis' car and leaving the area. Also, a witness told police he saw Franklin shoot Mr. James and [the defendant] was with Franklin at the time.

"The crime scene investigation resulted in the location of six shell casings found in the immediate area where witnesses saw the shots being fired. A ballistics examination disclosed that five casings had been ejected from the same gun, while the sixth casing was ejected from a different gun. Such [evidence] is clearly consistent with there being two shooters. Another witness told police that he saw Franklin and [the defendant] together just before the shooting and saw Mr. Franklin fire shots, but he did not admit that he had seen [the defendant] fire any shots.

"On May 19, 2014, the defendant . . . was being interviewed by a member of the State's Attorney's Office in Waterbury in connection with another shooting. When asked about the previous shooting of John Claude James, the defendant . . . admitted that he was one of the shooters."

Thereafter, the court canvassed the defendant with respect to his pleas. During the canvass, the defendant stated that he was not under the influence of any alcohol, drugs or medication; he had had a sufficient opportunity prior to the plea canvass to discuss his pleas

with counsel; he was satisfied with his counsel's advice; he was entering his "guilty plea" and his "probation plea" voluntarily; and nobody was forcing or threatening him to enter the pleas. The defendant stated that he understood the rights he was giving up by entering his pleas, including his right against compulsory self-incrimination, his right to a trial by jury, and his right to confront his accusers.

The following colloquy between the court and the defendant ensued:

"The Court: A person violates their probation when they are on probation and they violate the terms of it, and you could have gotten up to three years on that. Do you understand that?

"[The Defendant]: Yes.

"The Court: Do you agree you violated your probation?

"[The Defendant]: Yes.

"The Court: And on that, I'm going to terminate [probation] at the time of sentencing. On the crime of murder, the state would have to prove that with the intent to cause the death of another person, you caused the death of such person or of a third person, and that is punishable by up to sixty years in prison, twenty-five years at the minimum or nonsuspendable portion. Do you understand that?

"[The Defendant]: Yes."

The court proceeded to ask the defendant if he understood the nature of an *Alford* plea and if he understood the sentence to which he was exposed as well as the agreement in place with the state for a sentence of thirty-two and one-half years imprisonment, with a twenty-five year minimum sentence. The defendant stated that he understood these matters and that no additional promises had been made to him with respect to the pleas. The court stated: "Once I accept these pleas, you can't change your mind later on unless there's some valid legal reason. Do you understand that?" The defendant replied affirmatively. At the conclusion of the canvass, the defendant stated that he had understood the questions directed to him by the court and that there was nothing that he wished to raise to the court or his attorney prior to the court's acceptance of the pleas.

The court accepted the defendant's pleas, finding that they were "understandably made with the assistance of competent counsel." The court found that the defendant was "guilty" and that he had violated his probation. The court then continued the matter to a later date.

By handwritten letter dated October 27, 2014, and addressed to the court, the defendant stated that he wanted to withdraw his plea and that he desired a

new attorney. In relevant part, the letter, signed by the defendant, stated: "I request to withdraw my guilty plea. I have a legitimate claim. I am not guilty of murder. I am claiming ineffective counsel. I was not explained all elements of the crime of murder. There was no testimony at Cody Franklin's trial that I assisted, aided, or conspiracy. There was no intent on my part. The mere fact that I did not assist and help Cody Franklin from the testimony of the state witnesses is enough to have the charges against me dismissed.

"Had my attorney investigated and told me all the facts I wouldn't have pled guilty to a charge that I didn't commit. I felt pressured to take the plea because I was told I had 'no chance' of winning [at] trial. Individuals trying to say I confessed to things I did not. I didn't sign anything or state anything on the record. (Absent this so-called confession.)

"I need a new attorney and I need for him to request a 'Motion to Vacate' and a 'evidentiary hearing.' My counsel also failed to file a 'Motion to Dismiss' the murder charges after the Cody Franklin trial. Please look into this matter."

Additionally, the defendant wrote: "My attorney never told me the difference between accessory after the fact and obstruction of justice, and aiding and abetting. I never and did not encourage, and or facilitate or participate in the [crime] by the testimony of the state witness. I had 'no' knowledge that anyone was going to kill anyone. I request a new attorney and to withdraw my plea. Also a evidence hearing on this matter. Ineffective assistance and evidence hearing. Please withdraw my plea. I couldn't make an intelligent decision. Please look into this matter."

On December 4, 2014, through counsel, the defendant filed a motion to withdraw his guilty plea pursuant to Practice Book §§ 39-26 and 39-27. In relevant part, the motion stated: "In subsequent written and oral communications between the defendant and undersigned counsel, the defendant has indicated he did not possess knowledge or fully understand the sentence that could be imposed or the consequences thereto at the time he entered the guilty plea." The state filed a written opposition to the defendant's motion. Therein, the state asserted that the transcript of the plea canvass of September 19, 2014, reflected that, in compliance with Practice Book § 39-19, the court addressed the defendant with regard to the mandatory minimum sentence and maximum possible sentence on the charge. The state directed the court's attention to the portion of the transcript in which the court indicated, and the defendant verbally acknowledged, that the total sentence exposure on the charges of murder and violation of probation was sixty-three years' incarceration, with twenty-five years being nonsuspendable. Moreover, the state argued, the transcript reflected that the defendant

understood that, pursuant to the plea agreement, he would serve a minimum term of incarceration of twenty-five years and a maximum term of incarceration of thirty-two and one-half years. The state argued that the plea transcript reflected that the defendant understood the sentence to be imposed, that the defendant's motion should be denied, and that an evidentiary hearing on the motion was not necessary.

By a second handwritten letter, dated December 8, 2014, and addressed to the court, the defendant renewed his request to withdraw his plea and for new counsel. The letter, signed by the defendant, stated in relevant part: "[T]here are a few things I would like to bring to your attention. First and foremost, I was in (special aid) in school and didn't have enough time to be fully explained anything about my charges. I just came and it was on the table. (Accept or reject.) My lawyer never explained the full conditions to . . . such charge I was supposed to plea to in which any evidence points to me as an accessory to. I never had a legal visit or anything. I would really like to take this plea back. My lawyer talked me into something I didn't want to do. I was confused. When I came to court I've told him this personally and that I would like a new lawyer. (Ineffective counsel.) He didn't put any motions in to try to get any hearings when I asked for some. When I was explained about my charge after the fact I told him to withdraw my plea. He wants to wait until after the last minute going against my wishes. This is my life on the line and I would like to withdraw and go to trial. Because I'm not responsible for this charge that's against me. Please I would really appreciate it a lot. Also requesting a new lawyer. I told my old lawyer, Thomas Farver, [that] I wanted to request a new one and I don't think he put it in and went around what I said. I have [a] court [appearance] on December 19, 2014 that is supposed to be a sentencing date. I really hope you grant the motion for my plea to be withdrawn."

The defendant, represented by counsel, appeared in court on December 19, 2014, for sentencing. At the beginning of the hearing, the court stated: "I know the defendant had sent some letters to me which seemed to indicate that, possibly, he was interested in withdrawing his plea."[5] The court did not inquire into the defendant's claim that he had not been apprised of the nature of the charge to which he had pleaded guilty. The court, however, referred to the motion to withdraw that was filed on the defendant's behalf by his attorney. The following colloquy then occurred:

"The Court: So, I guess I should . . . ask [the defendant] . . . is he still pursuing a motion to withdraw this plea? . . .

"[The Defendant]: Mm-hm. Yes.

"The Court: All right. And the basis I just read that your lawyer put in [the motion to withdraw the plea], is that . . . you did not possess knowledge or fully understand the sentence or the consequences thereto?

"[The Defendant]: Yes.

"The Court: All right. Do you want . . . to explain it any more than that? Why is it you . . . want to withdraw your plea?

"[The Defendant]: Why do I want to—because I feel like everything wasn't explained. It was, like, as soon as I got to court, boom, it's just like . . . take this right now. You go to trial, you losing. It was like I was forced to take it. I felt like I was forced to take the plea.

"The Court: And who forced you to take the plea; the system, you mean, or the court or—

"[The Defendant]: No, my lawyer.

"The Court: Your lawyer, how did he force you?

"[The Defendant]: It's like, he told me right there, if I don't take it . . . I'm gonna lose; that's what he said.

"The Court: But . . . you know, this case was pretried on numerous occasions. As a matter of fact, I know even back in June of 2014 there actually was a different offer, a higher offer of thirty-five years, and then I think that was retried on August 7th, according to [my] notes, and then on September 19th there was a change in it down to thirty-two and a half years, and you came upstairs that day and I asked you numerous questions, and what you're saying here now is not something you said then.

"[The Defendant]: I wasn't aware of no thirty-five years.

"The Court: No. Well, the day you entered the plea [agreement] was thirty-two and a half.

"[The Defendant]: Yeah.

"The Court: All right. I mean, there were previous offers. You never knew an offer before that that was higher than thirty-two and a half?

"[The Defendant]: No.

"The Court: All right. Well, you certainly knew the thirty-two and a half year sentence because you entered the plea to it that day, on September 19th, correct?

"[The Defendant]: Yes.

"The Court: All right. I mean, it is a matter of, just, you're changing your mind now, kind of like buyer's remorse, or did you think about it longer and think you just, you know, maybe you didn't make the right decision; is that what it is?

"[The Defendant]: Yes."[6]

The court then referred to the transcript from the plea canvass on September 19, 2014. The court asked the defendant if he remembered the court having asked him a series of questions at that earlier proceeding. The defendant replied, "Yeah. Yeah, somewhat." The court asked the defendant if he recalled answering that he was not under the influence of alcohol, drugs, or medication and that he had had a sufficient opportunity to discuss the plea with his attorney. The defendant replied, "No." The court asked the defendant if he recalled answering that he was satisfied with his attorney's advice concerning the pleas, that he was entering the pleas voluntarily, and that nobody was forcing or threatening him to enter the pleas. The defendant replied, "Yeah, some of it." Additionally, the court asked the defendant if he recalled answering that no additional promises had been made to him, and that he understood that he would not be permitted to change his mind and withdraw his pleas absent a valid legal reason to do so. The defendant replied, "Yes."

The following colloquy then ensued:

"The Court: In other words, so the transcript seems to bear out that a lot of questions I asked you was, did you need more time with your lawyer, are you satisfied with your lawyer's advice, is anybody forcing you to do this. And the transcript reflects, and so does my recollection, that you . . . answered everything appropriately at that time. And as you've just answered me today, it sounds like you just thought . . . longer over it since that day and you really just want to change your mind. Is that right?

"[The Defendant]: Yes."

When asked if he wished to be heard, the defendant's attorney stated: "I don't have anything to add other than the representations in the motion as reasons my client gave me that he wish[ed] to withdraw the plea. And I don't see, in the transcript [of the plea canvass], any technical reasons that would be supported by the Practice Book." When afforded an opportunity to address the court with respect to the motion to withdraw the plea, the prosecutor added, in addition to his written objection, that the defendant had prior experience in the criminal justice system.

The court stated: "The problem I'm having . . . and I know it was a big decision, and I know we're talking, obviously . . . about a . . . very long prison sentence, I certainly understand that, but, you know, there is no right to have a plea withdrawn after the plea has been entered and [the defendant has been] canvassed by the court. And the burden of proof is certainly on you to show a plausible reason for the withdrawal of that. And the problem is that . . . a lot of the statements that are in the written motion are very conclusory type of statements. There aren't a lot of facts or meat

to it, so to speak.

"And it certainly sounds like . . . from what you've indicated . . . it's more of a change of heart after thinking about it longer while waiting to be sentenced, by your own admission here today. Because the transcript [of the plea canvass] clearly bears [that] out and, certainly, so does my recollection, that you certainly appeared to understand what was going on. You indicated no force was being used or no threats to you, that your . . . plea was voluntary.

"So, certainly, based on what you said here today, based on the transcript of the plea proceedings, I don't think there's . . . a valid reason to withdraw your plea at this time or even to give you . . . any type of an evidentiary hearing. So, I'm going to deny the request."

After the court asked counsel whether there were any issues regarding the presentence investigation report, the defendant's attorney stated in relevant part: "My client has read the entire [presentence investigation] report this morning. . . . [H]e had one concern and that is that . . . and I think that we've addressed [it] . . . because as the offense charge it does say . . . murder and it was aiding and abetting—under the aiding and abetting provision. And so I think that should be noted for the record." The following exchange between the court and defense counsel followed:

"The Court: Well . . . are you looking for a formal correction to the presentence report or, just, you're making a—

"[The Defendant's Attorney]: I think if the judge would just put—I mean, that's your understanding as well?

"The Court: That is my—oh, definitely. I agree with you.

"[The Defendant's Attorney]: Yes. I don't think we need a formal correction to it.

"The Court: Okay.

"[The Defendant's Attorney]: But it was aiding and abetting.

"The Court: All right. So noted."

Thereafter, the victim's mother addressed the court and the defendant exercised his right of allocution. He stated that, although he did "not take [the victim's] life or plan to do so," he nonetheless had "blood on [his] hands" and apologized to the victim's family. The court vacated the defendant's probation and imposed a sentence of thirty-two and one-half years of imprisonment, twenty-five years of which is nonsuspendable. This appeal followed. Additional facts will be set forth as necessary.

I

First, we address the defendant's claim that the court abused its discretion by denying the defendant's motion to withdraw his plea prior to sentencing and, in the alternative, abused its discretion by failing to conduct an evidentiary hearing on the motion. We agree with the defendant that, under the unique circumstances in the present case, the court abused its discretion by failing to conduct an evidentiary hearing on the motion to withdraw the plea.

We observe that, "[u]nder [the *Alford* doctrine], a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. . . . The entry of a guilty plea under the *Alford* doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 204–205, 842 A.2d 567 (2004). " 'A guilty plea under the *Alford* doctrine is . . . the functional equivalent [to an unconditional] plea of nolo contendere' . . . *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985); which itself 'has the same legal effect as a plea of guilty on all further proceedings within the indictment. . . . The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case.' . . . *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 49, 757 A.2d 501 (2000)." *State* v. *Faraday*, supra, 205 n.17.

"The United States Supreme Court has held that for the acceptance of a guilty plea to comport with due process, the plea must be voluntarily and knowingly entered. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). *Boykin* set forth three federal constitutional rights of which a defendant must be cognizant prior to entering a guilty plea: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's own accusers. Id., 243. Since a guilty plea constitutes a waiver of these constitutional rights, a reviewing court cannot presume from a silent record that a defendant knowingly waived these three rights. *State* v. *Badgett*, 200 Conn. 412, 419–20, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986)." *State* v. *Carter*, 243 Conn. 392, 397, 703 A.2d 763 (1997).

"To be valid, guilty pleas must be made knowingly

and voluntarily. . . . [T]he trial court judge bears an affirmative, nondelegable duty to clarify the terms of a plea agreement. [U]nless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . When a defendant pleads guilty, he waives important fundamental constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. . . . These considerations demand the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences. . . .

"We, therefore, require the trial court affirmatively to clarify on the record that the defendant's guilty plea was made intelligently and voluntarily. . . . In order to make a knowing and voluntary choice, the defendant must possess an understanding of the law in relation to the facts, including all relevant information concerning the sentence. . . . The defendant must also be aware of the actual value of any commitments made to him by the court . . . because a realistic assessment of such promises is essential in making an intelligent decision to plead guilty. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. . . . [W]e conduct a plenary review of the circumstances surrounding [a] plea to determine if it was knowing and voluntary." (Citation omitted; internal quotation marks omitted.) *Almedina* v. *Commissioner of Correction*, 109 Conn. App. 1, 5–6, 950 A.2d 553, cert. denied, 289 Conn. 925, 958 A.2d 150 (2008).

Practice Book §§ 39-19 and 39-20, which encompass the constitutional essentials for the acceptance of a plea of guilty; see *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006); apply to the acceptance of *Alford* pleas. See, e.g., *State* v. *Carmelo T.*, 110 Conn. App. 543, 553, 955 A.2d 687, cert. denied, 289 Conn. 950, 960 A.2d 1037 (2008); *State* v. *Drakeford*, 54 Conn. App. 240, 249, 736 A.2d 912 (1999). Practice Book § 39-19[7] provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she understands: (1) The nature of the charge to which the plea is offered . . . ." Practice Book § 39-20 provides: "The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his or her counsel." "While the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three

core constitutional rights delineated in *Boykin*, it does not require that the trial court go beyond these constitutional minima. . . . A defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book [§§ 39-19 and 39-20]. Therefore . . . precise compliance with the provisions [of the Practice Book] is not constitutionally required." (Citations omitted; internal quotation marks omitted.) *State* v. *Ducharme*, 134 Conn. App. 595, 605–606, 39 A.3d 1183, cert. denied, 305 Conn. 905, 44 A.3d 181 (2012).

With respect to a defendant's right to withdraw his or her guilty plea, we observe that "[t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *State* v. *Anthony D.*, 320 Conn. 842, 850, 134 A.3d 219 (2016). Practice Book § 39-26 provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in [Practice Book §] 39-27.[8] A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed." (Footnote added.)

"[T]here is no language in Practice Book §§ 39-26 and 39-27 imposing an affirmative duty upon the court to conduct an inquiry into the basis of a defendant's motion to withdraw his guilty plea." *State* v. *Anthony D.*, supra, 320 Conn. 851. Faced with a request for an evidentiary hearing related to a motion to withdraw a guilty plea, the court must exercise its discretion by carefully evaluating the request in light of the allegations made in the motion or otherwise brought to the court's attention. "In considering whether to hold an evidentiary hearing on a motion to withdraw a guilty plea the court may disregard any allegations of fact, whether contained in the motion or made in an offer of proof, which are either conclusory, vague or oblique. For the purpose of determining whether to hold an evidentiary hearing, the court should ordinarily assume any specific allegations of fact to be true. If such allega-

tions furnish a basis for withdrawal of the plea under [Practice Book § 39-27] and are not conclusively refuted by the record of the plea proceedings and other information contained in the court file, then *an evidentiary hearing is required. . . .*

"An evidentiary hearing is not required if the record of the plea proceeding and other information in the court file conclusively establishes that the motion is without merit. . . . The burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Salas*, 92 Conn. App. 541, 544–45, 885 A.2d 1258 (2005); see also *State* v. *Johnson*, 253 Conn. 1, 50–51; 751 A.2d 298 (2000); *State* v. *Warner*, 165 Conn. App. 185, 192, 138 A.3d 463 (2016).

Before reaching the merits of the defendant's claim that the court erred by failing to conduct an evidentiary hearing related to his motion to withdraw the plea, we observe that the claim is reviewable on appeal. The claim is adequately briefed before this court and, although it is not necessary to a determination that the claim is reviewable on appeal; see *State* v. *Safford*, 22 Conn. App. 531, 534, 578 A.2d 152, cert. denied, 216 Conn. 823, 581 A.2d 1057 (1990); the record reflects that the defendant requested an evidentiary hearing related to his motion. Specifically, in the first of his handwritten letters that were mailed to and, apparently, considered by the court, the defendant specifically requested an "evidentiary hearing," and in the second letter he referred to the fact that, in connection with his desire "to take this plea back," his counsel had performed deficiently because, in part, he failed "to try to get any hearings . . . ."

Turning to the merits of the claim, we begin by looking to the factual allegations made by the defendant in his letters to the court. Both letters convey the defendant's confusion with respect to the nature of the charge to which he had pleaded guilty under the *Alford* doctrine. In relevant part, the defendant stated in his first letter that all of the elements of "the crime of murder" had not been explained to him, and he expressed his belief that there was no evidence that he had the necessary intent, or that he had assisted, aided, or had been part of a conspiracy. The defendant stated: "My attorney never told me the difference between accessory after the fact and obstruction of justice, and aiding and abetting. I never and did not encourage, aid or facilitate or participate in the [crime] . . . ." In his second letter, the defendant stated in relevant part: "My lawyer never explained the full conditions to the such charge I was suppose[d] to plea to in which any evidence paints to

me as an accessory to." These specific representations concerning the defendant's understanding of the nature of the charge, while not perfect models of clarity, are not conclusory, vague, or oblique. Thus, for purposes of the present claim, we presume their truthfulness. Additionally, these representations furnish a basis to withdraw the plea under Practice Book § 39-27. Under § 39-27 (2), a court may allow a defendant to withdraw his or her plea of guilty after its acceptance if "it was entered without knowledge of the nature of the charge . . . ."

We next turn to an examination of whether the defendant's representations are conclusively refuted by the record of the plea proceedings and other information contained in the court file. The record reflects that the defendant was convicted of murder, as an accessory, in violation of §§ 53a-54a (a) and 53a-8, the crime charged in the state's long form information filed on June 29, 2012.[9] At the time of the plea canvass, however, the court clerk informed the defendant that he had been charged with murder in violation of § 53a-54a, and the defendant pleaded guilty under the *Alford* doctrine to that charge. During its canvass, the court did not refer to accessorial liability.[10] With respect to the nature of the charge, the court did not explain the charge in terms of accessorial liability, but stated as follows: "On the crime of murder, the state would have to prove that with the intent to cause the death of another person, you caused the death of such person or of a third person . . . ."

In addition to a lack of any reference to the elements of accessorial liability during the plea canvass, the prosecutor at the time of the plea canvass set forth a factual basis for the plea that differed from the factual basis set forth in the state's long form information.[11] In the information, the state alleged that the defendant, intending to cause the victim's death, shot and caused the victim's death. During his recitation of the facts at the time of the plea canvass, which occurred *after* the defendant entered his guilty plea, the prosecutor stated in relevant part that the victim had been shot five times. Then, the prosecutor focused on the defendant's activities following the shooting. The prosecutor stated that the defendant and Franklin, who admitted that he "just shot someone," hid in the apartment of a nearby witness. The defendant offered the witness "weed" in an effort to induce her to say that he and Franklin had not been there. Then, the defendant called his sister, who then arrived at the scene and drove the defendant and Franklin away. The prosecutor stated that a witness observed Franklin, who was with the defendant, shoot the victim. Yet another witness observed the defendant and Franklin just prior to the shooting and observed Franklin, but not the defendant, fire gunshots.

The prosecutor, however, also referred to the state's

belief that there were two shooters, and referred to physical evidence, shell casings recovered from the crime scene and the results of ballistics testing, that supported such a theory of the crime. Finally, the prosecutor stated that, during an interview concerning an unrelated shooting, the defendant "admitted that he was one of the shooters." Although the prosecutor appears to have set forth a factual basis for the crime that supported both principal and accessory liability, unlike the facts set forth in the information, the factual basis set forth by the prosecutor did not include any reference to the defendant's intent.

In an examination of the plea proceedings, we observe that the court did not ask the defendant if his attorney had explained the elements of murder as an accessory or if his attorney had discussed his guilt as an accessory. Instead, as relevant to the issue of whether the defendant had been apprised of the nature of the charge, the court asked the defendant if he "had enough time on previous dates and today's date to discuss what you're doing here today with your attorney," and whether the defendant was satisfied with his attorney's advice.

At the time of sentencing, when the court addressed the defendant's motion to withdraw his plea, the court referred to the letters that the defendant had addressed to the court. The court also acknowledged that it had reviewed a transcript from the plea canvass, a copy of which the state attached to its written opposition to the defendant's motion to withdraw his plea. The factual representations in the letters, viewed in light of the file and the plea canvass, neither of which conclusively refuted the defendant's representations, sufficiently raised an issue concerning the defendant's understanding of the nature of the charge. Moreover, the events that transpired at the sentencing proceeding did not refute the defendant's representations. At the sentencing proceeding, the court did not specifically address the defendant's concerns as set forth in his letters, with respect to his understanding of the nature of the charge. The court did not ask the defendant if he understood the elements of murder under a theory of accessorial liability and did not ask him or his attorney if those elements had been explained to the defendant before he entered his plea. The defendant's attorney, who bore the responsibility of having advised his client, did not make any representations concerning the issue. If anything, the inquiry posed by the defendant's attorney to the court prior to the imposition of sentence, set forth previously in this opinion, reflects a degree of confusion on his part with regard to the offense to which the defendant had pleaded guilty.

In light of the foregoing, we conclude that the court abused its discretion in failing to conduct the evidentiary hearing requested by the defendant to determine

whether the defendant understood the nature of the charge to which he pleaded guilty under the *Alford* doctrine.

The state raises several arguments contrary to the defendant's claim, none of which we find to be persuasive. First, the state essentially argues that it is of no consequence whether the defendant understood that he had been charged under a theory of accessorial liability. The state argues that "the substantive crime charged in this case was murder [and] the court sufficiently apprised the defendant of the nature of the charge by explaining that he was charged with murder, in violation of General Statutes § 53a-54a." Additionally, the state draws our attention to the well settled principle that "[a] defendant may be convicted as an accessory, even if charged only as a principal, as long as the evidence presented at trial was sufficient to establish accessorial conduct." (Internal quotation marks omitted.) *State* v. *Hines*, 89 Conn. App. 440, 453, 873 A.2d 1042, cert. denied, 275 Conn. 904, 882 A.2d 678 (2005).

We are hesitant to agree with the state's seemingly broad proposition that whether a defendant is being convicted as a principal or an accessory is not relevant to his understanding of the nature of the charge. This court has explained that "[a]lthough a defendant may plead guilty to a crime without distinguishing whether he was a principal or an accessory, once he has chosen to plead guilty as an accessory and the court has accepted that choice by accepting that plea, he can be found guilty of only that crime and is entitled to a judgment, sentence and mittimus that reflects that crime. His decision to plead as an accessory has to be influenced by his belief that he will be found guilty as an accessory. . . . Due process requires that the defendant know the specific charge to which he is pleading. A jury may be polled as to the basis of its verdict to determine whether the defendant was convicted as a principal or an accessory. . . . If this is so, a defendant must be able to plead as an accessory or a principal." (Citations omitted.) *State* v. *Gamble*, 27 Conn. App. 1, 11–12, 604 A.2d 366, cert. denied, 222 Conn. 901, 606 A.2d 1329 (1992). Due process concerns require that a defendant intelligently enter into a plea; our Supreme Court has explained that "[d]ue process requires that a plea be entered voluntarily and intelligently. . . . Because every valid guilty plea must be demonstrably voluntary, knowing and intelligent, we require the record to disclose an act that represents a knowing choice among available alternative courses of action, *an understanding of the law in relation to the facts*, and sufficient awareness of the relevant circumstances and likely consequences of the plea. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Cren-*

*shaw*, 210 Conn. 304, 309, 554 A.2d 1074 (1989). It is difficult to comprehend how a defendant might be said to have understood the relationship between the law and the facts if he is unaware that his liability is accessorial in nature. A defendant's understanding of something as basic and central to the prosecution as the state's theory of liability must be viewed as integral to his assessment of his chances of prevailing at trial. Thus, such theory is a very practical consideration in terms of deciding whether to accept a plea agreement.

Second, the state argues that, in the absence of a positive suggestion to the contrary, the court may have presumed in the present case that counsel explained the nature of the charge to the defendant. "Defense counsel generally is presumed to have informed the defendant of the charges against him. [E]ven without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. . . . [U]nless a record contains some positive suggestion that the defendant's attorney had *not* informed the defendant of the elements of the crimes to which he was pleading guilty, the normal presumption applies. . . . [W]e have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Barnwell*, 102 Conn. App. 255, 259–60, 925 A.2d 1106 (2007).

We disagree with the state that the record supports a finding that the customary presumption applies in the present case. As stated previously in this opinion, the court did not inquire of the defendant with respect to accessorial liability; the court did not inquire whether his attorney had explained the nature of the charge, and neither the defendant nor his attorney made any representations with regard to this specific issue. At the plea canvass, the court clerk informed the defendant that he was charged with murder under § 53a-54a, and the defendant entered a plea of guilty to that charge.[12] Moreover, at the sentencing proceeding, the defendant's attorney asked the court if it was the court's understanding that the defendant had entered his plea under a theory of accessorial liability or as a principal. Moreover, in his letters to the court, the defendant expressly stated that his counsel had acted ineffectively and that he did not understand the nature of the charge.

Third, the state argues that the factual basis for the plea, in which the prosecutor referred to the two

shooter theory, as well as the state's operative long form information, which contained a reference to the accessorial liability statute, "clearly provided notice to the defendant that he was charged with committing the crime of murder based on accessorial liability." In light of the fact that the clerk did not refer to § 53a-8 when putting the defendant to plea, the fact that the factual basis set forth by the prosecutor reasonably might have been interpreted to encompass *both* principal and accessorial theories of liability,[13] and the lack of any reference to accessorial liability during the court's plea canvass, we are not persuaded by the state's argument.

Finally, the state argues that the claim should fail on the basis of what transpired when the court addressed the defendant just prior to sentencing with respect to his motion to withdraw the plea. The state points out that, at that time, the defendant merely expressed his belief that "everything" had not been explained to him and that he felt like he had been pressured to enter the plea. The state argues that these assertions were belied by the transcript of the plea canvass. Also, the state points out that, when the court addressed the defendant with respect to his motion to withdraw the plea, the defendant agreed with the court's assessment that the defendant's motion to withdraw merely reflected the fact that the defendant wanted to change his mind with respect to his plea. The state argues, correctly, that the defendant's mere remorse with respect to the plea was not a valid basis upon which to grant the motion. See Practice Book § 39-27. Additionally, the state points to the fact that defense counsel's written motion raised an issue concerning the defendant's understanding of the sentence that could be imposed or the consequences of the plea and that, at the sentencing hearing, defense counsel stated that he did not wish to add anything to these representations and that he believed that the transcript of the plea canvass did not support the granting of the motion.

At the time that the court considered the defendant's motion to withdraw the plea, it had reviewed both the defendant's handwritten letters, in which the defendant unambiguously requested permission to withdraw his plea, as well as the written motion to withdraw that was filed on the defendant's behalf by his trial counsel. Although the court referred to the letters, it appears from our review of the proceeding that the court did not inquire about their substance, particularly the representations made therein concerning the defendant's confusion with respect to the nature of the charge. Instead, the inquiries directed at the defendant by the court appear to have been related to the limited ground set forth in the written motion to withdraw that related to whether the defendant possessed knowledge of the sentence that could be imposed or the consequences of his plea. At the sentencing hearing, when the court afforded the defendant an opportunity to address the

court with respect to his motion to withdraw, the defendant did not raise with specificity all of the grounds that he set forth in his letters.

We do not dismiss lightly the state's arguments concerning what transpired at the sentencing proceeding. Certainly, in distilling the issues before it related to the defendant's motion, the court was entitled to rely on arguments and representations made at the sentencing hearing. Yet, we are mindful that the defendant is not an attorney and, in evaluating his communications to the court, it is not reasonable to expect him to engage the court with either the skill or precision of an attorney. In his letters to the court, he raised questions about his understanding of the nature of the charge at the time of the plea, stated that his trial counsel was ineffective, and requested permission to withdraw his plea. The transcript of the plea canvass, in which the defendant was not put to plea consistent with the state's long form information and which did not address any issues related to accessorial liability, did not refute the defendant's representations in this regard. Also, among the statements that the defendant made at the sentencing proceeding, the defendant stated, in general terms, that "everything wasn't explained" to him by counsel at the time of the plea.

Under these circumstances, we are reluctant to conclude that the defendant abandoned the specific representation made in his letters that he was not advised with respect to the elements of the crime, specifically "aiding and abetting," and, thus, that he did not understand the nature of the charge. Nor are we persuaded that the court reasonably could have relied solely on the representations of defense counsel, whom the defendant claimed was ineffective, in determining the basis of the defendant's motion, which, due to an apparent breakdown in the attorney-client relationship, the defendant presented to the court by means of his handwritten letters as well as the written motion filed by defense counsel.

For the foregoing reasons, we conclude that it was an abuse of the court's discretion not to grant the defendant's request for an evidentiary hearing. The proper remedy is to reverse the judgment and remand the case to the trial court for further proceedings, specifically, to conduct an evidentiary hearing on the defendant's motion for the purpose of determining whether the defendant's plea was knowing and voluntary and, thus, obtained in conformance with his due process rights.[14]

## II

Next, we address the defendant's claim that the court violated his right to counsel by failing to address the grievances that he raised to the court concerning his attorney and, in the alternative, abused its discretion by failing to inquire with respect to such complaints.

We agree with the defendant that the court abused its discretion by failing to inquire into his complaints in this regard.

As explained previously in this opinion, in the defendant's two handwritten letters, which the court acknowledged that it had received prior to the imposition of sentence, he asked the court for permission to withdraw his plea, explained in some detail why he believed that his counsel was ineffective, and requested the appointment of new counsel. Among the specific complaints concerning counsel's representation made by the defendant, he alleged that counsel had failed to explain the nature of the crime, failed to investigate the facts of the case, and pressured him into entering his plea. Additionally, the defendant suggested that counsel failed to bring to the court's attention his request for new counsel and had failed to bring to the court's attention his request for an evidentiary hearing related to his request to withdraw his plea. The record does not reflect that the defendant made any prior complaints with respect to his counsel's representation.

At the time that the court considered the defendant's motion to withdraw his plea, the court did not in any manner address the defendant's grievances that led to his request for the appointment of new counsel. The defendant argues that the court neither afforded him an opportunity to "voice his grievances [concerning his attorney] or to make a record of his complaints," and effectively ignored both his stated substantial grievances, which were not contradicted by the record, as well as his request for replacement counsel. The state argues that, even if we were to assume that the defendant's letters were sufficient to preserve the present claim, no further inquiry into the defendant's grievances was necessary in this case and that because the defendant did not furnish the court with a substantial reason for providing new counsel, the court properly denied, albeit implicitly, the defendant's request for substitute counsel.

"Where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction. . . . If [t]he defendant's eruptions at trial, however, fell short of a seemingly substantial complaint, we have held that the trial court need not inquire into the reasons underlying the defendant's dissatisfaction with his attorney. . . . The extent of an inquiry into a complaint concerning defense counsel lies within the discretion of the trial court. . . . Moreover, the defendant's right to be represented by counsel does not grant a defendant an unlimited opportunity to obtain alternate counsel on the eve of trial . . . and may not be used to achieve delay in the absence of exceptional circumstances. . . . The appellate scrutiny of the trial court's inquiry into complaints concerning adequacy of counsel must be tempered by the timing

of such complaints." (Citations omitted; internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 725, 631 A.2d 288 (1993). "[A] trial court has a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel . . . . The extent of that inquiry, however, lies within the discretion of the trial court. . . . A trial court does not abuse its discretion by failing to make further inquiry where the [respondent] has already had an adequate opportunity to inform the trial court of his complaints." (Citation omitted; internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 644, 935 A.2d 975 (2007).

As a first step in our analysis of whether the court conducted a sufficient inquiry, we conclude that the defendant's letters sufficiently alerted the court to a seemingly substantial complaint concerning a breakdown in the relationship between the defendant and his counsel. In his letters, the defendant stated, in general terms, that his counsel was ineffective and that he wanted a new attorney. He also stated, in more specific terms, that he felt like he had been pressured at the time of the plea and that he was not satisfied with his attorney's advice concerning the plea and, in particular, advice concerning the elements of the crime and whether the evidence supported a finding that he was an accessory to any crime. The defendant also stated that following the plea proceeding and against his wishes, counsel did not request an evidentiary hearing with respect to his motion to withdraw his plea or file a motion for the appointment of new counsel. The defendant did not state anything at the sentencing proceeding that contradicted these representations concerning the attorney-client relationship or might reasonably be viewed as an abandonment of his request for the appointment of new counsel. Consistent with his letters, he stated at the hearing that he believed that "everything wasn't explained" and that he had been pressured into entering his plea.

Next we turn to an examination of what inquiry, if any, the court undertook. In the context of ruling on the defendant's motion to withdraw his plea, the court did not set forth any findings of fact related to the performance of trial counsel. The court did not specifically address, let alone deny, the defendant's motion for new counsel. The court did not invite the defendant or his counsel to address the matter. The state urges us to find that the court "implicitly" made findings contrary to the defendant's complaints, yet there is no basis on which to infer that the court considered and rejected the defendant's complaints, which were raised for the first time in his letters. Moreover, we do not agree with the state that, in light of what transpired at the plea canvass, the court reasonably rejected the defendant's grievances on their face. Although the record of the plea canvass reflects that, at that time, the defendant

believed that he had been afforded an ample opportunity to discuss his plea with his attorney and that he was satisfied with that advice, the record is silent with respect to whether counsel adequately explained to the defendant the accessorial nature of the offense to which the defendant pleaded guilty.[15] In light of all of the circumstances, it appears that the court failed to conduct *any* type of inquiry into the defendant's grievances or his request for the appointment of a new attorney. In light of the defendant's seemingly substantive complaints, which were raised for the first time in his letters, the court abused its discretion by not inquiring further. The proper remedy, therefore, is for the court, on remand, to conduct an adequate inquiry into the defendant's complaints and his request for new counsel, and to rule on the request.[16]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] Also, the defendant admitted that, by his criminal conduct, he had violated the terms of his probation.

[3] Although the record reflects that the long form information was filed with the clerk of the New Haven judicial district on June 29, 2012, there is no corresponding entry on the court docket sheet and the record reflects that on September 19, 2012, the court marked off a motion for essential facts filed by the defendant under the belief that the state had not yet filed a long form information. A prior information in the court file, dated June 22, 2012, charged the defendant with murder, but not as an accessory, in the second count.

[4] In putting the defendant to plea, it is not clear from the record whether the clerk was reading from the state's long form information that was filed on June 29, 2012, or from a prior information that charged him with murder but omitted reference to the accessorial liability statute.

[5] We observe that the court referred to its receipt of the defendant's letters, which appear in the court file. The record does not reflect that the letters were returned to the defendant or that the court in any manner indicated that it had refused to consider them.

[6] Viewing the court's colloquy with the defendant in its entirety, we do not interpret this answer to the court's leading compound question as an admission on the part of the defendant that he merely had changed his mind. Before answering the court's question, the defendant had advised the court that he did not find that "everything" had been sufficiently explained to him, which would provide a basis for his stating, immediately thereafter, that he did not believe that he had made the correct decision with respect to entering the plea.

[7] Practice Book § 39-19 provides: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum sentence, if any;

"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

[8] Practice Book § 39-27 provides: "The grounds for allowing the defendant

to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with [Practice Book §] 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

[9] Again, we observe that a prior information in the court file, dated June 22, 2012, charged the defendant with murder, but not as an accessory.

[10] "Our courts have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged. . . . The trial court's failure to explicate an element renders the plea invalid only where the omitted element is a critical one . . . and only where it is not appropriate to presume that defense counsel has explained the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (Citations omitted; internal quotation marks omitted.) *State* v. *Hackett*, 16 Conn. App. 601, 603, 548 A.2d 16 (1988).

[11] Although we recognize that the court was not required to establish a factual basis for the plea; see *State* v. *Niblack*, 220 Conn. 270, 281, 596 A.2d 407 (1991); we know of no reason to disregard the factual basis provided in the present case in our examination of the events that transpired at the time of the plea canvass.

[12] Because in the present case, the court did not refer to the accessorial liability statute during its canvass and the court clerk did not inform the defendant that he was being charged under the accessory statute, the facts at issue in the present case are readily distinguishable from those at issue in *State* v. *Barnwell*, supra, 102 Conn. App. 260–62, a case on which the state heavily relies. We note, as well, that the claim at issue in the present case is distinct from the claims raised in *Barnwell*.

[13] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[14] In light of our resolution of this claim, we need not consider the defendant's third claim—whether the court accepted the plea in violation of the defendant's right to due process—or the other aspect of the defendant's first claim—whether the court abused its discretion in denying the defendant's motion to withdraw the plea.

[15] The state argues that the transcript of the plea canvass "completely belied the defendant's assertion that his counsel failed to provide satisfactory advice or that he pressured him to plead guilty." Although the plea canvass reflects that the defendant had an opportunity to discuss his plea with his attorney, he was satisfied with his advice, and that he was not pressured into pleading guilty, the plea canvass does not reflect that the defendant's attorney adequately advised him with respect to the nature of the charge, murder as an accessory, or that the defendant was satisfied with his counsel's representation subsequent to the plea canvass, in connection with the defendant's motion to withdraw his plea. His request for new counsel, therefore, was not necessarily belied by what transpired at the plea canvass.

[16] We clarify that our holding is limited to the court's obligation to conduct an inquiry into the defendant's grievances. We do not take any position with respect to the proper outcome of that inquiry. Moreover, in light of our resolution of this claim, we need not reach the merits of the defendant's claim that the court violated his right to counsel by failing to address his grievances.