******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************************

# DENNIS ADKINS *v.* COMMISSIONER OF CORRECTION
## (AC 40037)

Sheldon, Keller and Prescott, Js.

*Syllabus*

The petitioner, who had been convicted on a guilty plea pursuant to the *Alford* doctrine of the crime of felony murder, sought a writ of habeas corpus. At his sentencing hearing, the petitioner's trial counsel notified the trial court that, although counsel was unaware of any legal grounds to do so, the petitioner had indicated to him that he wanted to withdraw his plea. The trial court noted that there was a reference to the petitioner's request in the presentence investigation report and that it had received a correspondence from the petitioner in which he requested to withdraw his plea. After the petitioner addressed the court personally on the matter, the court denied the request, concluding that the petitioner had not presented the court with a basis on which to permit him to withdraw his guilty plea. Thereafter, the petitioner brought a habeas action, claiming, inter alia, that his trial counsel had rendered ineffective assistance and that he should be permitted to withdraw his guilty plea. The habeas court rendered judgment denying the habeas petition, and this court affirmed the judgment. Subsequently, the petitioner filed a third petition for a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance by failing to advise him with respect to his right to appeal from the trial court's denial of his oral motion to withdraw his guilty plea and had deprived him of his right to conflict free representation at trial because, prior to the date of this guilty plea, he had filed a grievance complaint against trial counsel. The petitioner also claimed that his prior habeas counsel had provided ineffective assistance in the prior habeas action by failing to raise his claims against trial counsel. Following a hearing at which trial counsel, prior habeas counsel and the petitioner testified, the habeas court dismissed the claims against trial counsel because they presented the same ground for relief that had been considered and denied by the court in the prior habeas action. The habeas court thereafter concluded that neither claim against prior habeas counsel had merit and rendered judgment denying the habeas petition, from which the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The petitioner could not prevail on his claim that the habeas court improperly rejected his claim that his prior habeas counsel rendered ineffective assistance in the prior habeas action by failing to raise his claim that trial counsel rendered ineffective assistance by not advising the petitioner with respect to his right to appeal from the denial of his motion to withdraw his guilty plea: the petitioner was unable to demonstrate that a nonfrivolous ground for appeal of his motion to withdraw his guilty plea existed, as the habeas court expressly found that his motion was not related to ineffective representation by trial counsel or any misunderstanding by the petitioner but, instead, was based on the fact that he had changed his mind about the plea, which finding was fatal to the petitioner's claim that there were viable grounds to appeal and, thus, that a rational defendant would have wanted to bring an appeal to pursue those grounds, and there was no credible evidence to support the petitioner's claim that trial counsel should have been aware of a valid ground on which the petitioner may have based his motion, as the habeas court made findings of fact that undermined the petitioner's claim that nonfrivolous grounds existed and the petitioner did not demonstrate that those findings lacked support in the evidence; moreover, the petitioner did not demonstrate that, despite the fact that there were not any nonfrivolous grounds for an appeal, trial counsel had a constitutional obligation to advise him about his right to appeal, as the evidence, viewed in its entirety, did not support a finding that the petitioner reasonably demonstrated to trial counsel that he was interested in bringing an appeal or inquired to any extent about his appellate rights.

2. This court declined to review the petitioner's unpreserved claim that the

habeas court improperly rejected his claim that his prior habeas counsel rendered ineffective assistance by failing to present evidence in support of his claim that his guilty plea was the result of trial counsel's ineffective assistance, as the petitioner did not distinctly raise that claim in his habeas petition, and, as a result, the habeas court did not expressly rule on it in its thorough memorandum of decision.

3. The petitioner could not prevail on his claim that the habeas court improperly rejected his claim that his prior habeas counsel rendered ineffective assistance by failing to claim in the prior habeas action that trial counsel's conflict of interest resulted in the petitioner's guilty plea: although the petitioner claimed that the habeas court improperly raised sua sponte the issue of waiver and dismissed his claim on that ground, the court did not conclude that the petitioner had waived his claim but, rather, appropriately considered and rejected the petitioner's claim on its merits, concluding that the waiver doctrine provided additional support for its determination that the underlying claim against trial counsel was dubious at best when viewed in light of state and federal authority concerning what types of claims may be raised following a valid guilty plea; moreover, the court unambiguously found that the petitioner's guilty plea was made knowingly and voluntarily, it explicitly rejected the petitioner's argument that his dissatisfaction with trial counsel and the issues surrounding the filing of his grievance complaint influenced his decision to plead guilty, and the court, having observed the petitioner testify about the plea and having assessed the truthfulness of his testimony, was not obligated to accept as true his version of the facts; accordingly, the court's factual finding concerning the voluntariness of the plea was supported by evidence in the record, and this court was not persuaded that a mistake had been made.

Argued April 10—officially released October 2, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. Following the granting of his petition for certification to appeal, the petitioner, Dennis Adkins, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court improperly rejected his claim that his prior habeas counsel rendered ineffective assistance on the basis that he failed (1) to claim that trial counsel rendered ineffective assistance by failing to advise the petitioner with respect to his right to appeal from the denial of his motion to withdraw his guilty plea, (2) to present evidence in support of the petitioner's claim that his guilty plea was the result of trial counsel's ineffective assistance, and (3) to claim that trial counsel's conflict of interest resulted in the petitioner's guilty plea. We affirm the judgment of the habeas court.

The following undisputed procedural history is relevant to this appeal. The petitioner was arrested and charged with murder in violation of General Statutes § 53a-54 (a), felony murder in violation of General Statutes § 53a-54c, and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On April 4, 2000, pursuant to a plea agreement with the state, the petitioner pleaded guilty under the *Alford* doctrine[1] to felony murder in violation of § 53a-54c. The petitioner was represented by Attorney Francis Mandanici.

The prosecutor set forth the factual basis of the plea, as follows: "On August 24, 1999, at or about 10:27 p.m., in front of 119 Dewitt Street in New Haven, the victim [in] this case, Rodney Williams, was on the front porch and a person wearing a mask came down the driveway and confronted two people standing in the driveway, one of them a young lady. The person in the mask grabbed the lady's chain from around her neck. She grabbed it back. She and her boyfriend, who were in the driveway, indicated that the person was wearing a mask and had a handgun in his hand. According to witnesses out front, the individual came down the driveway with the mask and confronted the victim in this case, who was standing on the front steps or on the ground near the front steps, confronted the victim with a handgun, and the victim came down off the steps and went toward the assailant and there was a short tussle during which the assailant fired a series of shots, one of which hit the victim, Rodney Williams, in the chest and caused his death.

"During the subsequent investigation, a Calvin Hinton . . . was interviewed and indicated that he had been with [the petitioner] earlier that evening. They had talked about robbing the victim in this case and that he saw the [petitioner] with a weapon. The [petitioner], in a subsequent statement, indicated [that] he received the weapon . . . from Hinton. In any event, Hinton

indicated that he saw the [petitioner] go to the area where the victim was standing and later saw the [petitioner] run away from the area.

"Subsequently, [the petitioner] was interviewed and admitted that he and Hinton had talked about [committing] the robbery, that Hinton had provided him the gun, that he had gone to the area for the purpose of committing a robbery of Williams, who they knew to be a drug dealer, [and] that a struggle ensued and shots were fired from his gun which struck Williams. [The petitioner] indicated that he did not intend to kill him, but that this did occur during the attempted commission of a robbery. Subsequently, after [the petitioner] was arrested and [incarcerated,] he admitted to an individual in the correctional facility that he was responsible for the shooting and actually detailed the fact that it occurred during the commission of an attempted robbery."

The prosecutor set forth the details of the plea agreement. The petitioner was to serve a thirty-five year term of incarceration and the state agreed to enter a nolle prosequi with respect to additional charges. Additionally, the state agreed not to bring charges against the petitioner for what it considered to be efforts made by him to seek retribution against a witness. The trial court, *Fasano, J.*, thoroughly canvassed the petitioner. After finding that the plea was made knowingly and voluntarily, the court accepted the plea and entered a finding of guilt.

The petitioner returned before the court, *Fasano, J.*, on May 26, 2000, for sentencing. At the hearing, Mandanici indicated that, although he was unaware of any legal grounds for the request, the petitioner indicated to him that he wanted to withdraw his plea. The court observed that there was a reference to the petitioner's request in the presentence investigation report and that it had received a correspondence from the petitioner in which he requested to withdraw his plea. The petitioner addressed the court personally with respect to his request, indicating that he was not satisfied with Mandanici's representation, Mandanici was aware that he did not commit the crime, the evidence that he had confessed to the crime was "bull shit," and he believed that he was entitled to "a lesser charge." The petitioner stated that he was "not pleading out to no murder." The court replied that the petitioner already had pleaded guilty under the *Alford* doctrine, that the petitioner had been canvassed thoroughly, and that the petitioner had not presented the court with a basis on which to permit him to withdraw his guilty plea.[2] Thereafter, the court sentenced the petitioner in accordance with the plea agreement that he had reached with the state.

In 2003, in a prior habeas corpus action, the petitioner filed an amended petition for a writ of habeas corpus

in which he alleged that Mandanici had rendered ineffective assistance and, because of this violation of his constitutional rights, he should be permitted to withdraw his guilty plea. Also, relying on what he characterized as newly discovered evidence, the petitioner alleged that he was actually innocent. With respect to his ineffective assistance of counsel claim, the petitioner alleged that Mandanici had failed to conduct a proper pretrial investigation, failed to devote sufficient time to his defense, and failed to withdraw from his representation of the petitioner.

During the prior habeas action, the petitioner was represented by Attorney Brian Russell. Following a hearing, the court, *Fuger, J.*, concluded that the petitioner had failed to demonstrate that Mandanici had performed deficiently and that even if such a showing had been made, the petitioner had failed to demonstrate that he suffered any prejudice as a result of Mandanici's acts or omissions. In its memorandum of decision, the court observed that there were two witnesses to the murder committed by the petitioner and that the petitioner had provided a confession to the police in which he revealed his role as the shooter. The court then stated: "[T]he petitioner now asserts that he was under the influence of illegal drugs at the time he made the statement [to the police], that the statement is false and that he only did it because he did not want to be labeled a 'snitch.' However, these assertions are not worthy of belief. Insofar as being under the influence of drugs at the time the statement was made, there are two factors that undermine the credibility of this assertion. First, the petitioner was arrested at about 10 a.m. on September 23, 1999. The statement was taken between 7:46 p.m. and 8:17 p.m. on that day. According to the petitioner, he ran from the police and swallowed some unspecified amount of crack cocaine that he had on him. There has been no evidence presented to this habeas court that would allow the court to conclude that a person who had ingested cocaine would still be under the influence of that drug nearly ten hours later. Significantly, there has been no evidence adduced to allow this court to conclude what, if anything, the ingestion of cocaine might do to a person's cognitive abilities. However, it is more or less colloquially known that the effects of cocaine are relatively short lived. Second, the testimony of Detective Sergeant [Joanne] Schaller, who coincidentally has training as an EMT paramedic, is clear that the petitioner was not exhibiting any outward signs of drug intoxication, nor did he complain of any illness or impairment. Moreover, there is some evidence that the idea to argue intoxication as a means to invalidate the confession originated with another inmate, Jason Reese. All of this leads this court to conclude that the petitioner's statement attacking his confession is self-serving and unworthy of belief." (Footnote omitted.)

Moreover, the court rejected the petitioner's claim

of actual innocence, noting that the petitioner had failed to submit to the court "anything even remotely resembling newly discovered evidence." Consequently, the court denied the amended petition for a writ of habeas corpus. This court affirmed the judgment of the habeas court. *Adkins* v. *Commissioner of Correction*, 88 Conn. App. 901, 869 A.2d 279 (2005), cert. denied, 281 Conn. 906, 916 A.2d 48 (2007).

In May, 2016, the petitioner, represented by counsel, filed a third amended petition for a writ of habeas corpus in the habeas corpus action that underlies the present appeal. The amended petition set forth three counts. In count one, the petitioner alleged that Mandanici deprived him of his right to effective representation by failing to advise him with respect to his right to appeal from the trial court's denial of his oral motion to withdraw his guilty plea. He argued that he did not have a full and fair opportunity to raise this claim in his prior habeas action.

In count two, the petitioner alleged that Mandanici deprived him of his right to conflict free representation at trial because on February 19, 2000, prior to the date of his plea, he filed a grievance complaint against Mandanici.[3] The petitioner alleged that the filing of the complaint "completed a total and complete breakdown in the attorney-client relationship" between him and Mandanici. He argued that his defense "was adversely affected by [Mandanici's] actual conflict of interest" because Mandanici failed to communicate with him, failed to investigate the allegations against him, failed to zealously advocate for him during plea negotiations, and failed to advise him with respect to his right to appeal from the trial court's denial of his oral motion to withdraw his guilty plea. The petitioner alleged that he was prejudiced in that he received a harsher sentence than he would have received following a trial or an adequate plea bargaining process. The petitioner alleged that he did not have a full and fair opportunity to present this claim in his prior habeas action.

In count three, the petitioner alleged that Russell had deprived him of his right to the effective assistance of counsel during the prior habeas action by failing "to plead and present evidence and argument" in support of the claims set forth in counts one and two. The petitioner argued that there was a reasonable probability that, but for Russell's deficient performance, the result of the petitioner's prior habeas action would have been favorable to him.

With respect to the substantive allegations in the amended petition, the respondent, the Commissioner of Correction, generally left the petitioner to his proof. With respect to claims one and two, the respondent alleged as a special defense that, to the extent that the petitioner intended to raise these claims as freestanding claims against trial counsel, they were successive and

should be dismissed. Additionally, with respect to claim one, the respondent alleged that, absent a showing that the Appellate Court denied a motion seeking permission to file a late appeal from the trial court's denial of the petitioner's motion to withdraw his guilty plea, the petitioner's claim related to his right to appeal was not ripe. Also, with respect to claim two, the respondent alleged as a special defense that the allegations set forth in claim two were barred by res judicata and collateral estoppel because they were raised, litigated, and resolved against the petitioner in the prior habeas action. Moreover, the respondent alleged that claim two should be dismissed because it constituted a legally noncognizable claim of "cumulative" error by trial counsel. Also, the respondent argued that the petitioner was defaulted from litigating the allegations in claim two because his conflict with Mandanici was the basis for his motion to withdraw his guilty plea and, although he had the opportunity to do so, he failed to appeal from the trial court's denial of the motion to withdraw the guilty plea. The respondent alleged that the petitioner failed to satisfy the cause and prejudice standard to excuse the default.

In his reply to the return, the petitioner alleged that claims one and two were not barred by the successive petition doctrine because, due to Russell's ineffective representation during the prior habeas action, he was deprived of a full and fair opportunity to litigate these claims in that action. With respect to claim one, the petitioner alleged that his claim related to his right to appeal was ripe for adjudication.[4] With respect to claim two, the petitioner alleged that the doctrines of collateral estoppel and res judicata did not apply because the issues involved had not been litigated in a prior proceeding. Also, the petitioner alleged that claim two was not pleaded in a legally deficient manner. Finally, the petitioner alleged that any procedural default with respect to claim two was the result of the ineffective assistance of counsel.

The court, *Sferrazza, J.*, held a trial over the course of two days, September 1 and October 25, 2016. Among the evidence presented, the court heard testimony from Mandanici, Russell, and the petitioner.

On December 7, 2016, the court rendered judgment denying the amended petition for a writ of habeas corpus. In its thorough memorandum of decision, the court dismissed the first and second counts of the petition under Practice Book § 23-29 (3) because they presented the same ground for relief, namely, ineffective representation by Mandanici, that Judge Fuger had considered and denied in the prior habeas action. The court, however, observed that, in the present action, the petitioner had the right to assert that Russell had rendered ineffective representation in the prior habeas action by failing to claim that Mandanici rendered ineffective represen-

tation because Russell failed to raise the newly raised claims on which the petitioner presently relies. These claims are that Mandanici failed to advise him with respect to his right to appeal from the trial court's denial of his motion to withdraw his guilty plea and that, because the petitioner filed a grievance complaint against Mandanici prior to the date of the plea, Mandanici had a conflict of interest during his representation of the petitioner. The court proceeded to analyze the merits of both of the petitioner's claims of ineffective assistance by Russell. After concluding that neither claim had merit, it denied the habeas petition.[5] Thereafter, the court granted the petitioner's petition for certification to appeal. This appeal followed. Additional facts will be discussed as necessary.

Before turning to the petitioner's claims, we set forth basic principles governing the present appeal. "The use of a habeas petition to raise an ineffective assistance of habeas counsel claim, commonly referred to as a habeas on a habeas, was approved by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992). In *Lozada*, the court determined that the statutory right to habeas counsel for indigent petitioners provided in General Statutes § 51-296 (a) includes an implied requirement that such counsel be effective, and it held that the appropriate vehicle to challenge the effectiveness of habeas counsel is through a habeas petition. . . . In *Lozada*, the court explained that [t]o succeed in his bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. *Lozada* v. *Warden*, supra, 223 Conn. 842. As to each of those inquiries, the petitioner is required to satisfy the familiar two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d (1984)]. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . *Lozada* v. *Warden*, supra, 223 Conn. 842–43. In other words, a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice . . . .

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the chal-

lenged action might be considered sound trial strategy.
. . . [S]trategic choices made after thorough investiga-
tion of law and facts relevant to plausible options are
virtually unchallengeable; [but] strategic choices made
after less than complete investigation are reasonable
precisely to the extent that reasonable professional
judgments support the limitations on investigation.
. . . With respect to the prejudice prong, the petitioner
must establish that if he had received effective represen-
tation by habeas counsel, there is a reasonable probabil-
ity that the habeas court would have found that he
was entitled to reversal of the conviction and a new
trial . . . .

"It is well settled that in reviewing the denial of a
habeas petition alleging the ineffective assistance of
counsel, [t]his court cannot disturb the underlying facts
found by the habeas court unless they are clearly erro-
neous, but our review of whether the facts as found by
the habeas court constituted a violation of the petition-
er's constitutional right to effective assistance of coun-
sel is plenary." (Citations omitted; internal quotation
marks omitted.) *Gerald W.* v. *Commissioner of Correc-
tion*, 169 Conn. App. 456, 463–65, 150 A.3d 729 (2016),
cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017); see
also *Toccaline* v. *Commissioner of Correction*, 177
Conn. App. 480, 499, 172 A.3d 821 (describing petition-
er's burden as "herculean task"), cert. denied, 327 Conn.
986, 175 A.3d 45 (2017).

I

First, the petitioner claims that the court improperly
rejected his claim that Russell rendered ineffective
assistance in the prior habeas action in that he failed
to claim that Mandanici rendered ineffective assistance
by failing to advise the petitioner with respect to his
right to appeal from the denial of his motion to withdraw
his guilty plea. We disagree.

The court analyzed this claim, in relevant part, as
follows: "Between plea and sentencing, on May 26, 2000,
the petitioner expressed his desire to withdraw his
guilty plea to both Attorney Mandanici and the trial
judge in the presentence investigation report . . . and
other material sent directly to the court by the peti-
tioner.

"Before imposing sentence, the trial judge heard the
parties' positions on this request. Attorney Mandanici
candidly acknowledged that he knew of no legal basis
to grant the petitioner's request. Attorney Mandanici
related that the petitioner never articulated to him any
reason to withdraw the guilty plea except that the peti-
tioner experienced a change of heart.

"The trial judge inquired of the petitioner as to why
he should permit the petitioner to withdraw his guilty
plea. The petitioner responded by disavowing any
knowledge that he pleaded guilty to murder rather than

a lesser offense and by repudiating his confessions to the police and admissions to others. The trial court found that no legitimate basis for the withdrawal of the guilty plea existed and denied the petitioner's request.

"Attorney Mandanici never advised the petitioner about the opportunity to appeal from that denial, and no appeal was timely initiated. The [Supreme] Court denied permission to file a late appeal on September 27, 2016, more than sixteen years after the criminal case concluded."

The habeas court stated that the petitioner bore the burden of proving not only that Mandanici performed deficiently by failing to advise him with respect to his right to appeal, but that he suffered prejudice in that he would have succeeded on appeal and that he would have been acquitted following a retrial.[6]

The court stated: "After consideration of all the evidence adduced, the court finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence, that Attorney Russell was deficient for failing in the first habeas corpus [action] to raise [a claim related to] Attorney Mandanici's failure to advise the petitioner about the possibility of appealing from the denial of his request to withdraw his plea. Judge Fasano's denial of the request was unassailable. Attorney Mandanici provided no good faith basis to support that request. The petitioner voiced his complaint that he misunderstood that he [had] pleaded guilty to felony murder, but the transcript of the plea canvass refutes that statement.

"The court finds that the petitioner's request to withdraw his guilty plea was simply a change of mind. Reconsideration or regret, standing alone, cannot validly support a motion to withdraw a guilty plea that was otherwise lawfully entered. [In ruling on the petitioner's prior habeas petition] Judge Fuger found 'the petitioner's statement attacking his confession is self-serving and unworthy of belief' . . . . This court received no credible evidence that Attorney Russell could have presented a stronger case before Judge Fuger to alter that conclusion.

"No legal expert testified at the habeas trial that Attorney Russell ineffectively represented the petitioner on that issue or any other issue. The court rules that the petitioner has failed to demonstrate either prong of the *Strickland* standard with respect to Attorney Russell's assistance at the first habeas trial. . . . No genuine infirmity surrounding the guilty plea existed." (Citation omitted.)

In its evaluation of the merits of an appeal from Judge Fasano's ruling, the court observed that the petitioner failed to demonstrate that any of the grounds as set forth in Practice Book § 39-27[7] that would support a motion to withdraw a guilty plea could be proven. As

the court observed, in light of the petitioner's representations, he conceivably could have attempted to demonstrate under Practice Book § 39-27 (4) that Mandanici had rendered ineffective assistance that resulted in his decision to plead guilty. The court observed, however, that such a claim of ineffective assistance had been raised before and rejected on its merits by Judge Fuger in the prior habeas action and that Judge Fuger's decision had been affirmed on appeal.

The court stated: "At the time of his request, the petitioner bore the burden to present facts sufficient to persuade the trial court that his guilty plea should be withdrawn at [that] point in the proceedings . . . . There was no credible evidence presented at the habeas trial before this court to support a claim that such proof was available to Attorney Mandanici at the time the petitioner sought to withdraw his plea. Consequently, Attorney Russell had no professional obligation to raise a claim of ineffective assistance for failing to advise the petitioner of the possibility of appealing from that denial of his request because that appeal was very likely to fail." (Citation omitted; internal quotation marks omitted.)

In the present appeal, the petitioner argues that although counsel is not always required to advise a defendant of his or her right to appeal following a guilty plea, Mandanici had a duty to advise him that he could appeal from the denial of his motion to withdraw his guilty plea. The petitioner argues that his conduct during the sentencing hearing demonstrated his interest in pursuing an appeal. Moreover, the petitioner argues, the record reflected that he was prejudiced by Mandanici's failure because he had several nonfrivolous claims to raise in an appeal, which included claims with respect to whether (1) his plea was the result of ineffective assistance of counsel, (2) the sentencing court should have appointed him new counsel for purpose of his motion to withdraw his plea and should have held a full hearing in connection with his motion to withdraw his plea, and (3) he did not fully understand the charges contemplated by the plea agreement. The petitioner acknowledges that, in addressing Judge Fasano, he did not articulate a basis for his motion, but he argues that it was unnecessary for him to do so because he provided a basis in his correspondence to the court and that, in denying the motion to withdraw the guilty plea, the sentencing court failed to address the concerns set forth therein, namely, that he had not understood the nature of the plea agreement and that he was dissatisfied with Mandanici's representation.

In *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 7–10, 761 A.2d 740 (2000), our Supreme Court, relying on *Roe* v. *Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), set forth the applicable standard of review under the federal constitution in the determi-

nation of whether counsel is ineffective in failing to apprise a defendant of the right to appeal from a guilty plea. The court stated: "*Roe* has clarified the applicable standard of review under the federal constitution in the determination of whether counsel is ineffective in failing to apprise a defendant of the right to appeal from a guilty plea. The Supreme Court held that, in such a case, counsel has a constitutional obligation to advise a defendant of appeal rights when either (1) the defendant has reasonably demonstrated to counsel his or her interest in filing an appeal, or (2) a rational defendant would want to appeal under the circumstances. . . .

"The Supreme Court began its decision in *Roe* with a review of *Strickland* v. *Washington*, supra, 466 U.S. 687, in which the court had held that criminal defendants have a sixth amendment right to 'reasonably effective' legal assistance. Under *Strickland*, a defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's representation fell below an objective standard of reasonableness . . . and (2) counsel's deficient performance prejudiced the defendant in that there was a reasonable probability that the result of the proceeding would have been different. . . .

"The Supreme Court in *Roe* then further articulated that 'this [*Strickland*] test applies to claims, like [the petitioner's in *Roe*] that counsel was constitutionally ineffective for failing to file a notice of appeal.' *Roe* v. *Flores-Ortega*, supra, 528 U.S. 477. '[N]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel. . . . Rather, courts must judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . and [j]udicial scrutiny of counsel's performance must be highly deferential . . . .' " (Citations omitted.) *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 7–8.

"The court in *Roe* began its analysis with the first part of the *Strickland* test and enunciated the rule to be applied to ineffective assistance claims concerning the failure to take an appeal. 'In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking . . . whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to [mean] . . . advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant . . . [c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. . . . If counsel has not consulted with the defendant, the court

must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. . . . And, while States are free to impose whatever specific rules they see fit to ensure that criminal defendants are well represented . . . the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.' . . . *Roe* v. *Flores-Ortega*, supra, 528 U.S. 478–79 . . . .

"Rejecting a bright line test that would require counsel *always* to consult with a defendant regarding an appeal, the court in *Roe* stated: 'We . . . hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.' . . . [Id.] 480.

"The second part of the *Strickland* test, as enunciated in *Roe*, requires the defendant to show prejudice from counsel's deficient performance. . . . '[T]o show prejudice [when counsel fails to apprise a defendant of his or her appellate rights], a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.' Id., 484. The court further articulated that 'whether a given defendant has made the requisite showing will turn on the facts of a particular case. . . . [E]vidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination.' . . . Id., 485." (Citations omitted; emphasis in original; footnote omitted.) *Ghant* v. *Commissioner of Correction*, supra, 255 Conn. 8–10.[8]

Having set forth the court's findings of fact and the legal standard governing the present claim, we turn to

an examination of the merits of the petitioner's claim that Mandanici rendered ineffective assistance by failing to advise him concerning his right to appeal and that Russell rendered ineffective assistance by failing to raise such a claim in the prior habeas action. In the present case, there is no factual dispute that Mandanici did not consult with the petitioner concerning his appellate rights following the denial of the motion to withdraw the guilty plea. In determining, under *Strickland*'s first prong, whether Mandanici had a constitutional obligation to advise the petitioner concerning his right to appeal, we first consider in our plenary review whether the issues arising from the denial of the motion to withdraw the guilty plea had such a degree of merit that a rational defendant would have wanted to appeal.

In arguing that Russell rendered ineffective assistance during the prior habeas trial, the petitioner argues that the record supports a finding that a rational defendant would have appealed from Judge Fasano's denial of his motion to withdraw his guilty plea. He asserts that, setting aside what he expressly stated to Judge Fasano when he was asked why he wanted to withdraw his plea,[9] he had alerted the court in a correspondence that his plea was the result of ineffective assistance by Mandanici and that he did not understand the charges contemplated by the plea agreement.[10] At the time that Judge Fasano addressed the petitioner and Mandanici, Judge Fasano stated that he was aware of the petitioner's correspondence. Assuming that, in addition to what the petitioner stated at the sentencing hearing when Judge Fasano afforded him an opportunity to explain his motion, Judge Fasano should have considered the content of any correspondence he had received from the petitioner concerning the motion, the petitioner is unable to demonstrate that the grounds for the motion to withdraw his plea were nonfrivolous in nature.

Previously in this opinion, we set forth in detail the habeas court's findings of fact. The habeas court expressly found that the petitioner's motion to withdraw his guilty plea was not related to ineffective representation by Mandanici or any misunderstanding by the petitioner. It is significant that, in its role as fact finder, the habeas court found that the petitioner's motion to withdraw his guilty plea reflected that *he simply had changed his mind about the plea*. The court found that there was "no credible evidence" to support the petitioner's claim that Mandanici should have been aware of a valid ground on which the petitioner may have based his motion. Consequently, the habeas court found that Russell was not deficient for failing to raise a claim related to Mandanici's assistance. The habeas court made findings of fact that undermine the petitioner's claim that nonfrivolous grounds existed to support an appeal from Judge Fasano's ruling. The petitioner has not demonstrated that the court's findings of fact lack support in the evidence.

The petitioner also argues that a nonfrivolous basis to appeal existed because Judge Fasano did not appoint new counsel to litigate the motion to withdraw the guilty plea or conduct an adequate hearing into the motion.[11] Regardless of whether the petitioner in the present case was afforded a full evidentiary hearing or new counsel to assist him in presenting his motion, he was afforded a full opportunity to demonstrate the merits of his motion during the present habeas trial. Specifically, the habeas trial afforded him a full opportunity to demonstrate that a reasonable defendant in his position would have appealed because nonfrivolous grounds for an appeal existed. After examining the evidence presented by the petitioner, however, the habeas court found that he was unable to demonstrate that a nonfrivolous ground for appeal existed because the motion was based not on a defect in Mandanici's representation or confusion about the nature of the charge, but on the fact that the petitioner had changed his mind. The petitioner cannot dispute that such a change of heart concerning the plea is an invalid basis upon which to base a motion to withdraw a plea. This finding is fatal to the petitioner's claim that there were viable grounds to appeal and, thus, that a rational defendant would have wanted to bring an appeal to pursue these grounds.

Next, in determining whether Mandanici had a constitutional obligation to advise the petitioner concerning his right to appeal, we consider under our plenary standard of review whether the evidence as a whole reflects that the petitioner had reasonably demonstrated to Mandanici that he was interested in appealing from Judge Fasano's denial of his motion to withdraw the guilty plea. As we stated previously in this opinion, the habeas court did not analyze the petitioner's claim in light of the currently recognized standard as set forth in *Roe* and did not set forth any findings of fact with respect to this distinct issue. See footnote 6 of this opinion. As a reviewing court, we must rely on the factual findings of the habeas court unless they are not supported by the record. Despite the absence of specific factual findings with respect to this issue, we may examine the evidence to determine whether the petitioner presented evidence on which the habeas court reasonably could have found that such a showing had been made. If such evidence is lacking, the court's failure to make any relevant findings, under the *Roe* standard, with respect to the issue of whether the petitioner demonstrated an interest in appealing is harmless.

At the present habeas trial, the petitioner presented the transcripts from his prior habeas proceeding in 2003. The petitioner's testimony at that prior proceeding does not reflect that he had asked Mandanici about his right to appeal from the denial of his motion to withdraw his guilty plea or had otherwise indicated to Mandanici

that he was interested in bringing an appeal. Likewise, during Mandanici's testimony at the prior habeas trial, Mandanici did not testify that the petitioner had asked him about his right to appeal or had otherwise stated that he was interested in bringing an appeal. Rather, Mandanici testified that he did not believe that there were grounds for bringing the motion to withdraw the guilty plea and that the petitioner wanted to withdraw his plea "because he had changed his mind."

During his testimony at the present habeas trial, the petitioner explained the reasons why he wanted to withdraw his plea and his view that he did not want to proceed to trial under Mandanici's representation. He stated that, by the time of the sentencing hearing, he had filed a grievance complaint against Mandanici and that his relationship with Mandanici had deteriorated. He testified that prior to his appearance at the sentencing hearing, he had not even discussed his desire to withdraw his plea with Mandanici. The petitioner testified that, after the sentencing hearing and the court's denial of his motion, he did not speak with Mandanici. He testified that Mandanici did not advise him that he could appeal from Judge Fasano's ruling, and, in fact, he and Mandanici did not have *any* discussions about the topic of an appeal. He testified that he was unaware that he could appeal from that ruling but that he "most likely" would have appealed if he knew that he could do so. At the present habeas trial, Mandanici testified that he could not recall whether he spoke with the petitioner following the sentencing hearing.

The petitioner broadly asserts in his appellate brief that his "actions" at the sentencing hearing "reasonably demonstrated that he would be interested in pursuing an appeal." (Internal quotation marks omitted.) Our careful review of the transcript of the sentencing hearing, however, does not reflect that the petitioner made any reference to an appeal or, in lay terms, bringing any type of challenge to Judge Fasano's ruling. Although, at the hearing, the petitioner communicated with the court with respect to the reasons why he believed that he should be permitted to withdraw his guilty plea and expressed his dissatisfaction with Mandanici, none of his statements reasonably may be interpreted to reflect a desire to further pursue the issue.

The evidence, therefore, reflects that despite the fact that, during the present habeas trial, he expressed his desire to bring an appeal from Judge Fasano's ruling, there was no evidence that he demonstrated such an interest to Mandanici or inquired to any extent about his appellate rights.[12] Because the evidence, viewed in its entirety, does not support a finding that the petitioner reasonably demonstrated to Mandanici that he was interested in bringing an appeal from Judge Fasano's denial of his motion to withdraw the guilty plea, the petitioner has not demonstrated that, despite

the fact that there were not any nonfrivolous grounds for an appeal, Mandanici had a constitutional obligation to advise him about his right to appeal.

In light of the foregoing, we conclude that the petitioner is unable to demonstrate that, in the prior habeas action, Russell rendered ineffective assistance by failing to pursue a claim concerning Mandanici's failure to advise him concerning his right to appeal.

## II

Next, the petitioner claims that the court improperly rejected his claim that Russell rendered ineffective assistance in that he failed to present evidence in support of the petitioner's claim that his guilty plea was the result of Mandanici's ineffective assistance. We decline to reach the merits of this unpreserved claim.

In support of this claim, the petitioner argues that, at the prior habeas trial, he testified, inter alia, about the ways in which, in his view, Mandanici rendered ineffective assistance. The petitioner argues, however, that, at the prior habeas trial, Russell failed to present testimony from him that would have demonstrated how the deficiencies in Mandanici's representation "impacted his decision to plead guilty, or what would have needed to change in order for the petitioner to have rejected the plea and proceeded to trial." He argues that the judgment of the habeas court should be reversed because Russell's failure to present such testimony deprived him of the effective assistance of habeas counsel.

The state argues, and we agree, that the petitioner did not plead this ground in his habeas petition. "It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Abdullah* v. *Commissioner of Correction*, 123 Conn. App. 197, 202, 1 A.3d 1102, cert. denied, 298 Conn. 930, 5 A.3d 488 (2010); see also *Arriaga* v. *Commissioner of Correction*, 120 Conn. App. 258, 262, 990 A.2d 910 (2010), appeal dismissed, 303 Conn. 698, 36 A.3d 224 (2012).

Thus, we turn to the petitioner's amended petition. In count three of his amended petition, the only count based on Russell's representation, he alleged in relevant part that "[Russell's] performance was deficient because he failed to plead and present evidence and

argument in support of the claims" previously set forth in his petition. These claims were, in count one, that Mandanici was ineffective for failing to advise the petitioner that he had the right to appeal from Judge Fasano's denial of his oral motion to withdraw his guilty plea and, in count two, that "[t]he petitioner's defense was adversely affected by [Mandanici's] *actual conflict of interest* . . . ." (Emphasis added.) In count two, the petitioner alleged that he was prejudiced by a conflict of interest because Mandanici failed to reasonably communicate with him, to adequately investigate the allegations against him, to zealously advocate for him during plea negotiations, and to advise him about his right to appeal from Judge Fasano's denial of his motion to withdraw his guilty plea. Nowhere in the amended petition[13] did the petitioner allege that Russell was deficient for failing to present evidence in support of a claim that his decision to plead guilty was the product of any type of deficiencies in Mandanici's representation generally.[14]

In light of the fact that the petitioner did not distinctly raise the current claim in his amended petition, it is unsurprising that the court did not expressly rule on it in its thorough memorandum of decision.[15] "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the [petitioner's] claim. . . . This court is not compelled to consider issues neither alleged in the habeas petition nor considered at the habeas proceeding . . . ." (Internal quotation marks omitted.) *Satchwell* v. *Commissioner of Correction*, 119 Conn. App. 614, 619, 988 A.2d 907, cert. denied, 296 Conn. 901, 991 A.2d 1103 (2010); see also *Greene* v. *Commissioner of Correction*, 131 Conn. App. 820, 822, 29 A.3d 171 (2011), cert. denied, 303 Conn. 936, 36 A.3d 695 (2012). Accordingly, we decline to reach the merits of this claim.[16]

### III

Finally, the petitioner claims that the court improperly rejected his claim that Russell rendered ineffective assistance in his prior habeas action by failing to claim that Mandanici's conflict of interest resulted in the petitioner's guilty plea. We disagree.

In rejecting the petitioner's claim, the habeas court stated in relevant part: "The petitioner alleges that . . . Russell represented him deficiently because he failed to raise the claim that . . . Mandanici had a conflict of interest in continued representation of the petitioner during his criminal case. The purported basis for that conflict of interest claim was that the petitioner had, on February 19, 2000, filed a complaint against . . . Mandanici with the Statewide Grievance Committee *while* the criminal case was pending. That grievance was ultimately dismissed because the committee deter-

mined that no misconduct occurred. This allegation of ineffective assistance by habeas counsel fails for multiple reasons.

"First, the gist of the petitioner's grievance was that he was dissatisfied with the amount of investigation performed and the lack of communication with the petitioner by . . . Mandanici. This form of discontent fails to create a conflict of interest requiring the removal of counsel . . . .

"Unhappiness with the perceived performance of counsel by a criminal defendant creates no ground for conflict of interest requiring removal of counsel . . . . Insignificant and unsubstantiated criticisms of trial counsel are insufficient to warrant withdrawal by that lawyer . . . . The filing of a grievance based on that perception is likewise insufficient to implicate violation of the defendant's sixth amendment rights and does not disqualify the attorney who is the subject of that grievance from continuing to represent the recalcitrant client . . . . Consequently, the supposed conflict of interest engendered by the lodging of the grievance against . . . Mandanici afforded a very shaky legal ground on which . . . Russell could assert such a claim at the earlier habeas proceeding.

"Second, the petitioner's *later* guilty plea waived any conflict of interest claim even if . . . the ersatz disqualifying circumstance existed. The petitioner pleaded guilty on April 14, 2000, around two months *after* he grieved . . . Mandanici. The general rule is that a guilty plea waives all nonjurisdictional defects antecedent to the entering of the plea, including defects asserting constitutional deprivations . . . . Only defects which implicate the subject matter jurisdiction of the court survive a later valid guilty plea, and effects asserting lack of personal jurisdiction over an accused are waived by a subsequent guilty plea. . . . This waiver rule applies equally to matters raised by way of direct appeal or by collateral attack, such as through a petition for habeas corpus relief . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.)

Then, the court discussed Connecticut Supreme Court and federal court case law in support of the well settled proposition that a later guilty plea waives claims of ineffectiveness of counsel at earlier proceedings unrelated to the taking of a plea. The court correctly observed that, unless an alleged conflict of interest was shown to have rendered a plea itself to be involuntarily or unknowingly made, a claim of a conflict of interest by an accused's attorney is waived for all purposes by virtue of a guilty plea.

The court stated: "This court's review of the petitioner's plea hearing transcript discloses that the petitioner entered that plea, under the *Alford* doctrine, knowingly and voluntarily. Whatever psychological role the peti-

tioner's dissatisfaction with . . . Mandanici's previous representation may have played in his decision to plead guilty is immaterial. What counts is that the petitioner understood the rights he gave up by pleading guilty, the nature of the charge against him, the strengths and weaknesses of the state's case and his own, the punishments available for that offense, and the terms of the agreed disposition. This court's examination of the record leads it to concur with Judge Fuger's finding on the same point that the petitioner 'freely made the choice to give up his constitutional right to a trial in order to obtain favorable consideration upon sentencing' . . . .

"This waiver provides additional support for the conclusion that . . . Russell acted properly and professionally when he omitted such a dubious claim in the first habeas case."

On appeal, the petitioner argues that the court improperly raised the issue of waiver sua sponte and in reliance on that doctrine determined that he was unable to demonstrate that Russell rendered ineffective representation by failing to pursue a claim in the prior habeas action related to Mandanici's conflict of interest. The petitioner accurately observes that the respondent did not allege waiver as a special defense in his return. The petitioner argues that it was improper for the court to have disposed of his claim based on that defense because he was without notice that the court would rely on waiver. He argues that, "[a]lthough the issue of whether waiver must be pleaded by the respondent in a habeas case before a habeas court can dismiss a petition on grounds of waiver has not been directly been addressed by Connecticut courts," appellate case law and Practice Book § 23-30 (b), which requires the respondent to allege in the return "facts in support of any claim . . . that the petitioner is not entitled to relief," support a determination that a habeas court may not sua sponte raise a special defense and dispose of a claim in reliance thereupon. The petitioner relies heavily on this court's holdings in *Diaz* v. *Commissioner of Correction*, 157 Conn. App. 701, 706–707, 117 A.3d 1003 (2015), appeal dismissed, 326 Conn. 419, 165 A.3d 147 (2017), and *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 786–87, 93 A.3d 165 (2014). In both *Diaz* and *Barlow*, this court concluded that it was reversible error for a habeas court to have sua sponte raised the affirmative defense of procedural default and thereafter to have dismissed a habeas petition on that ground that had not been pleaded by the respondent. *Diaz* v. *Commissioner of Correction*, supra, 706–707; *Barlow* v. *Commissioner of Correction*, supra, 786–87.

We are not persuaded by the petitioner's argument concerning waiver because, contrary to the petitioner's characterization of the court's analysis, the court's decision does not reflect that it sua sponte either raised an

affirmative defense (or a claim that the petitioner was not entitled to relief) or dismissed the petition, in whole or in part, on the basis of such defense or claim. The court did not conclude that the petitioner had waived his claim that Russell had deprived him of ineffective representation during the prior habeas action. Under *Strickland*, it was appropriate for the court to evaluate what prejudice, if any, resulted to the petitioner as a result of Russell's alleged deficient performance. The court, in evaluating whether the petitioner met his burden of demonstrating that Russell had prejudiced him by failing to raise a claim related to Mandanici's alleged conflict of interest relied, in part, on its conclusion that the claim that Russell did not raise would have been waived by virtue of the petitioner's guilty plea. Thus, the court considered and rejected the petitioner's claim against Russell on its merits, concluding that the waiver doctrine provided "additional support" for its determination that the underlying claim against Mandanici that Russell did not raise at the prior proceeding was "dubious," at best, when viewed in light of state and federal authority concerning what types of claims may be raised following a valid guilty plea. The habeas court did not determine that the petitioner's claim arising from Russell's representation was waived nor did it dismiss that portion of the petition on that ground.

Additionally, the petitioner argues that, even if the court properly considered the issue of waiver, it improperly relied on that doctrine because his testimony at the habeas trial reflected that the breakdown in his relationship with Mandanici and his concern that Mandanici would not represent him zealously at trial was "the catalyst for his decision to accept the guilty plea." The petitioner argues that the evidence presented, including his testimony, demonstrated "a direct nexus" between the conflict of interest involving Mandanici and his guilty plea. The petitioner urges us to conclude that because he was able to prove this factual link between the conflict of interest and his plea, such a showing necessarily provided him with a valid ground to withdraw his plea under Practice Book § 39-27. Accordingly, the petitioner argues, the court should not have concluded that the conflict of interest claim was not strong and, thus, that Russell did not deprive him of his right to effective representation by not raising it in the prior habeas action.

In this aspect of his argument, the petitioner urges us to conclude that, to the extent that the court did not view his testimony and other evidence concerning his dissatisfaction with Mandanici as proof that Mandanici's conflict of interest was inherently related to his guilty plea, the court's findings are clearly erroneous.

As we have discussed previously in this opinion, the court recognized that it was significant to determine whether the claimed conflict of interest somehow ren-

dered the petitioner's plea invalid. The court explained in its memorandum of decision, however, that "[t]he petitioner's request to withdraw his guilty plea was simply a change of mind. Reconsideration or regret, standing alone, cannot validly support a motion to withdraw a guilty plea that was otherwise lawfully entered." The court unambiguously found that the petitioner's plea was knowingly and voluntarily made, explicitly rejecting the petitioner's argument that his dissatisfaction with Mandanici and the issues surrounding the filing of his grievance complaint influenced his decision to plead guilty. In making this finding, which is fatal to the petitioner's claim, the court stated that it had examined the record and, in particular, the transcript of the plea hearing of April 4, 2000.

We reiterate that we "cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous . . . ." (Internal quotation marks omitted.) *Gerald W.* v. *Commissioner of Correction*, supra, 169 Conn. App. 465. "[A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 174 Conn. App. 776, 786, 166 A.3d 815, cert. denied, 327 Conn. 957, 172 A.3d 204 (2017). "[T]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Bennett* v. *Commissioner of Correction*, 182 Conn. App. 541, 555–56,    A.3d    (2018).

The petitioner relies on the weight of his testimony, in which he attempted to demonstrate that his plea was not knowingly and voluntarily made, as well as other evidence presented at the habeas trial to demonstrate that at the time of the plea he was dissatisfied with Mandanici's representation. The court, having had a firsthand vantage point from which to observe the petitioner testify about the plea and assess the truthfulness of his testimony, was not obligated to accept as true the petitioner's version of the facts, specifically, that he was compelled to plead guilty by virtue of Mandanici's ineffectiveness and the filing of the grievance complaint. The court relied on the transcript of the plea hearing, which reflects that the petitioner had been thoroughly canvassed by Judge Fasano and, despite his expressions of dissatisfaction with Mandanici, nonetheless indicated, among other things, that he was agreeable to the plea agreement, that he was satisfied with Mandanici's advice concerning the plea, that he believed that he was doing the right thing by pleading guilty, that he understood the rights he was giving up by pleading guilty, that he was pleading guilty voluntarily, that he understood the state's case against him, that he understood the punishment he was facing if he

proceeded to trial, and that he was motivated to plead guilty rather than risk receiving a heavier penalty following a trial. Thus, the court's factual finding concerning the voluntariness of the plea is supported by evidence in the record. We are not persuaded that a mistake has been made.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[2] The petitioner was put to plea for "felony murder in violation of . . . § 53a-54c." As part of its canvass, the court asked the petitioner if had an opportunity to discuss with his attorney the elements of the offense and the evidence on which the state relied. Also, the court asked the petitioner if he understood the elements of the offense and the evidence on which the state relied. To both inquiries, the petitioner replied, "Yes." Further, the court asked Mandanici if he was satisfied that the petitioner understood the elements of the offense and the evidence on which the state relied. Mandanici replied affirmatively. The court did not further discuss the offense or the elements thereof.

None of the petitioner's claims in his amended petition for a writ of habeas corpus is based on an inadequacy in the court's canvass and, thus, such a claim is not before us. Nonetheless, we observe that, to dispel any possible confusion concerning the nature of the offense in cases such as the present case, it would be helpful for trial courts to clarify, during their plea canvasses, that when an accused pleads guilty to "felony murder" under the felony murder statute, § 53a-54c, he is, in fact, pleading guilty to a type of murder, other than intentional murder, and is, accordingly, subject to the same penalties that may be imposed for the crime of murder.

[3] In the grievance complaint, the petitioner alleged in general terms that Mandanici failed to investigate his case and failed to communicate with him concerning his defense. The statewide grievance committee concluded that Mandanici had not breached ethical standards in his representation of the petitioner and, therefore, dismissed the complaint.

[4] At trial, the petitioner presented evidence that by motion dated July 28, 2016, he sought permission from this court to file a late appeal from Judge Fasano's May 26, 2000 denial of his oral motion to withdraw his guilty plea, as well as an order from our Supreme Court, dated September 27, 2016, denying the motion.

[5] We will set forth the basis for the court's decision in the context of the claims raised on appeal.

[6] In its analysis of the petitioner's claim of whether Russell deprived him of his right to effective representation by failing to claim in the prior habeas action that Mandanici deprived him of his right to effective representation by failing to advise him of his right to appeal from Judge Fasano's denial of his motion to withdraw his guilty plea, the court relied on what it believed to be authorities that governed an analysis of the claim in 2003, when Russell represented the petitioner, namely, *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 454, 610 A.2d 598 (1992), and *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 151, 662 A.2d 718 (1995). The court correctly recognized that these cases later were overruled by *Small* v. *Commissioner of Correction*, 286 Conn. 707, 723, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008), and *Carraway* v. *Commissioner of Correction*, 317 Conn. 594, 600 n.6, 119 A.3d 1153 (2015), respectively.

The parties submit, and we agree, that the proper framework for evaluating an ineffective assistance of counsel claim based on counsel's failure to advise a defendant about his appellate rights following a guilty plea is based on an evaluation of whether counsel's deficient performance *deprived a defendant of an appeal that he would have taken*. This framework, which we will discuss in detail, was set forth in *Roe* v. *Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), and it has been followed by our appellate courts. See, e.g., *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 7, 761 A.2d 740 (2000); *Shelton* v. *Commissioner of Correction*, 116 Conn. App. 867, 878–79, 977 A.2d 714, cert. denied, 293 Conn. 936, 981 A.2d 1080 (2009). This is the standard under which we will evaluate the petitioner's claim. The fact that the habeas court utilized a different standard in its

evaluation of the present claim does not affect our plenary evaluation of the claim. As we explain in our subsequent analysis, the habeas court's detailed factual findings, which are supported by the evidence, amply support a conclusion that the petitioner is unable to prevail under the currently recognized standard.

Moreover, to the extent that the petitioner argues that the court erroneously relied on *Copas* in its analysis of the petitioner's claim that Russell rendered ineffective representation by failing to pursue a claim related to an alleged conflict of interest on the part of Mandanici, the habeas court's memorandum of decision does not support the claim.

[7] Practice Book § 39-27 provides: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows:

"(1) The plea was accepted without substantial compliance with Section 39-19;

"(2) The plea was involuntary, or it was entered without knowledge of the nature of the charge or without knowledge that the sentence actually imposed could be imposed;

"(3) The sentence exceeds that specified in a plea agreement which had been previously accepted, or in a plea agreement on which the judicial authority had deferred its decision to accept or reject the agreement at the time the plea of guilty was entered;

"(4) The plea resulted from the denial of effective assistance of counsel;

"(5) There was no factual basis for the plea; or

"(6) The plea either was not entered by a person authorized to act for a corporate defendant or was not subsequently ratified by a corporate defendant."

[8] We observe that, in *Roe*, the United States Supreme Court rejected a resort to a bright line rule that counsel must always consult with a defendant regarding an appeal. *Roe* v. *Flores-Ortega*, supra, 528 U.S. 480. Rather than adhering to what it considered to be per se rules governing the conduct of defense counsel, the court crafted an approach that focused on whether the failure to consult with a defendant regarding an appeal was reasonable in light of the particular circumstances of each case. Id., 481. We acknowledge, however, that the court in *Roe* stated that it was "the better practice for counsel routinely to consult with the defendant regarding the possibility of an appeal." Id., 479.

[9] The record reflects that at the sentencing hearing on May 26, 2000, Judge Fasano invited the petitioner to indicate a basis on which his motion to withdraw the plea should be granted. The petitioner stated that Mandanici was aware that he did not commit murder, that the confession on which the state relied was "bull shit," and that he believed that he would "get a lesser charge." When the petitioner stated that he was not pleading to murder, Judge Fasano reminded the petitioner that such a plea already had been made and accepted by the court.

[10] The correspondence on which the petitioner relies is addressed to Judge Fasano and is dated May 8, 2000. In this handwritten correspondence, the petitioner stated, in relevant part, that he was "unaware of what was really going on" with respect to the plea, Mandanici did not explain things adequately to him with respect to the plea, Mandanici did not communicate effectively with him, he believed that he was forced into making a plea, he no longer wanted to enter into a plea agreement, he wanted to proceed to trial, and he wanted an attorney appointed to represent him at trial.

[11] The defendant relies on this court's reasoning in *State* v. *Simpson*, 169 Conn. App. 168, 184–204, 150 A.3d 699 (2016). In *Simpson*, a direct appeal, this court determined that the trial court improperly had failed to conduct an evidentiary hearing on the defendant's motion to withdraw his guilty plea based on his representation that he did not understand the nature of the charge to which he pleaded guilty and that the trial court improperly had failed to inquire into his request for new counsel. Id. Following this court's decision, our Supreme Court granted certification to appeal. *State* v. *Simpson*, 324 Conn. 904, 151 A.3d 1289 (2016). Following oral argument in the present appeal, our Supreme Court officially released its decision reversing this court's judgment. *State* v. *Simpson*, 329 Conn. 820,      A.3d      (2018). Our Supreme Court concluded that the trial court had conducted an adequate hearing on the motion to withdraw the guilty plea and that an evidentiary hearing was unnecessary. Id., 842. Also, our Supreme Court concluded that the trial court was not required to conduct a hearing on the defendant's request for new counsel. Id.

The defendant's reliance on this court's decision in *Simpson* is unavailing, and a careful review of our Supreme Court's decision in *Simpson* does not

lend any support to the defendant's claim that he had advanced a nonfrivolous ground in connection with his motion to withdraw his guilty plea.

[12] At the present habeas trial, the petitioner testified that several days following the sentencing hearing, he "tried to reach" Mandanici. It is unclear from the petitioner's testimony, however, whether he actually spoke with Mandanici following the sentencing hearing or why he wanted to speak to Mandanici. The petitioner testified, however, that approximately one year following the sentencing hearing, he contacted the public defender's office in an attempt to obtain information about how to "withdraw the plea," but he was advised that the time period in which to appeal from Judge Fasano's ruling had expired.

[13] We observe, however, that the petitioner briefly mentioned the present claim in his posttrial brief, in which he argued that, in his prior habeas action, he bore the burden of demonstrating that he was prejudiced by Mandanici's ineffective assistance by proving that, if Mandanici had not performed deficiently, he would have rejected the state's plea offer and proceeded to trial. He argued in relevant part that Russell was ineffective for his failure "to present testimony that he would not have [pleaded] guilty if [he had been] properly represented [by Mandanici]." Although the petitioner made this argument in his posttrial brief, he did not distinctly raise it before the habeas court. "Claims raised for the first time in posttrial briefs are not reviewable by the habeas court or by this court on appeal." (Internal quotation marks omitted.) *Antwon W.* v. *Commissioner of Correction*, 172 Conn. App. 843, 877, 163 A.3d 1223, cert. denied, 326 Conn. 909, 164 A.3d 680 (2017).

[14] Our conclusion that the petitioner's second claim is not based on ineffective representation, but on a conflict of interest, is bolstered by the fact that, in count two of the amended petition, the petitioner alleged that his claim, based on the existence of a conflict of interest, was not previously raised. As we stated previously in this opinion, one of the grounds of the petitioner's prior habeas petition, in 2003, was that Mandanici rendered ineffective assistance and, because of this constitutional violation, he should be permitted to withdraw his guilty plea.

[15] Presumably, if the petitioner believed that the habeas court had overlooked this claim, he could have asked the court to address the claim by filing a postjudgment motion.

[16] We observe that, to the extent that the petitioner believes that in the present habeas action he presented credible evidence, including his own testimony, that demonstrated that, apart from any conflict of interest on Mandanici's part, defective representation by Mandanici resulted in his guilty plea, we observe that the court clearly indicated in its decision that it was not persuaded by the petitioner's evidence in this regard. In addressing the issue of whether Mandanici had a colorable basis upon which to bring a motion to withdraw the petitioner's guilty plea, the court considered whether, under Practice Book § 39-27 (4), the petitioner could have demonstrated that "[t]he plea resulted from the denial of effective assistance of counsel . . . ." The court expressly found that the petitioner had not presented any "credible evidence" in the present proceeding that there was a sound basis for Mandanici to bring a motion to withdraw the petitioner's guilty plea. This finding is significant in terms of the present claim because, even if the claim at issue concerning Russell's failure to present certain testimony from the petitioner at the prior habeas trial had been properly raised and considered by the trial court, the habeas court's finding, after hearing that testimony from the petitioner at the present trial, that his plea was not the result of any deficiencies on Mandanici's part necessarily undermines the petitioner's claim that he had been prejudiced by Russell's failure to present the petitioner's testimony in this regard at the prior habeas trial. Thus, even if the court should have addressed a claim of this nature, we are convinced that its failure to do so was harmless in light of its other findings.